WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

United States of America,

    Plaintiff,

v.

Fernando Arango,

    Defendant.

CV 09-178 TUC DCB

**O R D E R**

The Court finds that there is no evidence to dispute the Government's evidence that Defendant Arango obtained his citizenship illegally. The Court grants summary judgment for the United States.

United States citizenship may be "the highest hope of civilized men" and "once citizenship has conferred, it should not be taken away without the clearest sort of justification and proof." *Schneiderman v. United States*, 320 U.S. 118, 122 (1943). "To prevail in a denaturalization proceeding, the government must prove its case by clear, convincing, and unequivocal evidence, and leave no issue in doubt." *United States v. Koziy*, 728 F.2d 1314, 1318 (11th Cir. 1984) (citing *Fedorenko v. United States*, 449 U.S. 490, 505 (1981)). Once a court determines the Government has met its burden of proving a naturalized citizen obtained his citizenship illegally, or by concealing a material fact or through willful misrepresentation, it has no discretion to excuse the conduct, and must enter a judgment of denaturalization. *Fedorenko*, 449 U.S. at 517.

<u>Standard of review for summary judgment</u>

On summary judgment, the Government is entitled to judgment as a matter of law if the Court determines that in the record before it there exists "no genuine issue as to material fact."

Fed. R. Civ. P. 56(c). In determining whether to grant summary judgment, the Court views the facts and inferences from these facts in the light most favorable to the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986).

The Government bears the initial burden of demonstrating the absence of a genuine issue of material fact, but is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986). It is under no obligation to negate or disprove matters on which the non-moving party bears the burden of proof at trial. *Id.* at 325. Rather, the Government need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Id.*

The burden then shifts to the Defendant to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P.56(e)). To carry this burden, he must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). The Defendant cannot rest upon mere allegations or denials in the pleadings or papers, but instead must set forth specific facts demonstrating a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(e).

The Government bears the same burden when making its motion for summary judgment as when proceeding at trial. *Celotex*, 477 U.S. at 322. So to prevail, "[t]he party moving for summary judgment must offer evidence sufficient to support a finding upon every element of his claim for relief, except those elements admitted by his adversary." *Lockwood v. Wolf Corporation*, 629 F.2d 603, 611 (9th Cir. 1980).

The Judge's role on a motion for summary judgment is not to determine the truth of the matter or to weigh the evidence, or determine credibility, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 252. The inquiry mirrors the standard for a directed verdict: whether the evidence reveals a factual disagreement requiring submission to a jury or whether evidence is so one sided that one party must prevail as a matter of law.
/////

## Denaturalization proceedings against Defendant Arango

Defendant Arango became a naturalized citizen on September 12, 1989. He became a United States border patrol agent for the Unites States. In 2005, he was arrested and pled guilty for accepting a $50,000 bribe to cross drugs into the United States in a sting operation. He is serving nine years in prison at the Federal Correctional Institution (FCI) Terminal Island, California.[1] Subsequent to his arrest, during his interrogation, agents threatened to undo his citizenship if he failed to cooperate and provide information to the Government. Defendant obtained his citizenship as a result of his cooperation with INS agents in Manhattan, New York, in September 1982, "which led to the seizure of files and immigration related applications that ended up solving over 200 cases that were processed illegally by the marriage broker being investigated." (Points and Authorities in Opposition to Motion for Summary Judgment (D's Response), Arango Affidavit (Arango Affid.)).

It is undisputed that subsequent to his arrest and conviction in the drug case, the Government commenced denaturalization proceedings and deportation of Defendant. Defendant is a native of Colombia. On April 7,1980, Vicky Tirado, purporting to be his wife, filed a Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa, Form I-130, with the Immigration and Naturalization Service (INS). She submitted a putative certificate of marriage memorializing a fictitious marriage to Defendant Arango. Ms. Tirado is a United States citizen. The INS approved the Form I-130 based on Ms. Trinidad's United States citizenship and the marriage certificate. (United States Motion for Summary Judgment (US MSJ), Statement of Facts (SOF) at ¶¶ 1-5.)

On November 4, 1980, Arango filed a State Department Optional Form 230, Application for Immigrant Visa and Alien Registration. He claimed eligibility for an immigrant visa based on the approved Form I-130, as the spouse of an United States citizen. He listed Ms. Tirado as his wife and stated his purpose of coming to the United States was to join his wife. He was

---

[1] Defendant seeks dismissal of this action for lack of jurisdiction because he is incarcerated in California. The Court has already considered this question and ruled that jurisdiction lies in the place of residency at the time of arrest, which in this case was Rio Rico, Arizona. (Order filed August 18, 2009 (doc. 12)). The Defendant's Motion to Dismiss is denied.

interviewed and reaffirmed the I-130 under oath to a consular officer. His visa was approved on November 4, 1980. *Id.* ¶¶ 6-11.

These events were uncovered in 1982 during an investigation that led to arrests in an illegal marriage broker operation. Defendant was interviewed by INS agents and made the statement that follows:

> In 1979 my sister Amparo told me I could become a resident by marrying a citizen. She said she knew a man who would arrange it. I'd have to pay about $2,500 to him. I wouldn't have to live with the girl. Around December of 1979 I paid $2000 to Amparo to give to Miguel Dias . . . I never met Miguel or Vicky Tirado, my wife. I never got married. Somebody else took my place at the marriage bureau. . . . Amparo gave me all the Immigration papers from Miguel and I went to the American Consulate in Toronto for my green card.

*Id.* ¶22, Ex. G: Arrango Affid. 9/15/1982.

In 1989, Defendant submitted his naturalization application. He was interviewed and affirmed under oath that his 1980 immigration documents based on his sham marriage to Ms. Tirado were true. He filed a Petition for Naturalization, Form N-405, on June 15, 1989, and was naturalized on September 12, 1989. *Id.* ¶¶ 15-21. The Department of Homeland Security Adjudication Officer attests that during the interview, Defendant Arango did not disclose he had obtained his green card based on a sham marriage. If he had, she would have noted it on the application and would not have granted his application. *Id.* ¶¶ 23-24, Ex. D: Fripp Decl. ¶¶ 8-10.

Defendant argues that the Motion for Summary Judgment should be stricken because he has not had time to conduct discovery. He asserts that in exchange for his cooperation in 1982, the INS agents promised he could reside in the United States as a permanent resident and could apply for naturalization when he became eligible. He submits that three INS agents and his sister, who was given the same deal and is also now an American citizen, can confirm this. He seeks time to conduct discovery to obtain affidavits from these individuals. (D's Response at 1-2.) He also seeks documents and the names of agents from his 1989 naturalization proceeding. *Id.* at 2.

In reply, the Government notes that the agent who processed Defendant's 1989 application for naturalization attests that she was not informed that his marriage was a sham.

(USA MSJ, SOF, Ex. D: Fripp Declaration.) Gary Hittleman, now retired, was a Senior Special INS Agent in 1982. He recalled the marriage fraud investigation well. (USA Reply, Ex: Hittleman Decla. ¶ 2. He described the Defendant's sister as being the cooperating witness in the case and described Arango as a minor player. *Id.* ¶ 3. Agent Candemeres took Arango's statement and Agent Hittleman verified it. *Id.* ¶ 5-6. "Neither the INS nor the United States Attorney's Office made any agreement with Arango to permit him either to retain his illegally-procured permanent resident status or to obtain citizenship in exchange for his cooperation in the marriage fraud . . .." *Id.* ¶ 7. "The United States Attorney's Office was prepared to grant Amparo [Defendant's sister] – who played a considerably more prominent role in the marriage fraud investigation – immunity from criminal prosecution in exchange for her cooperation; however, even Amparo's deal did not, and could not, shield her from immigration consequences or grant her immunity from immigration proceedings. . . .." *Id.* ¶ 8. The other agent involved in the 1982 criminal investigation, Peter Candemeres, attested similarly. (USA Reply, Ex: Candemeres Decla.)

The former Chief of the Organized Crime Drug Enforcement Task Force, Charles Ferrigno, recalled the marriage fraud investigation. He has no knowledge of any Government agency ever making any agreement with Arango permitting him to either retain his illegally-procured permanent resident status or to somehow obtain citizenship in exchange for his cooperation. *Id.*, Ferrigno Decl. He expressly states: "In fact, Agent Candemeres, Agent Hittleman and I were not legally permitted or authorized to grant an alien in Arango's position lawful permanent resides status or United States citizenship based upon his admittedly fraudulent marriage." *Id. ¶4.*

The Government provides an affidavit from the Senior Special Agent in the 2005 drug investigation, who disputes Defendant's assertion that he threatened to fix the deal Arango received in 1982 regarding his citizenship. Most importantly, Agent Ward has reviewed Arango's A-file and all other available government records, and [has] not found any evidence whatsoever of any such cooperation agreement between the former INS agents and Arango." *Id.,* Ward Decl. ¶5.

Last, the Government provides a statement from Defendant Arango's sister saying that she has no knowledge of the Government ever offering him immunity for his cooperation in the 1982 marriage fraud case, and that she has told him she will not testify on his behalf. *Id.* Defendant charges that the INS agents have threatened his sister with denaturalization and her own deportation. He will aver at trial that "there was an agreement with INS agents to allow the defendant and his sister to remain in the U.S. as permanent residents in return for their cooperation in a sham marriage investigation some thirty years ago." (Response of Defendant to Plaintiff's Reply . . . (Sur-Reply)[2] at 1.) Defendant argues, "What Hittleman does not say is why he allowed both the defendant and his sister to remain in the U.S. as permanent residents rather than institute deportation proceedings. This unanswered question, once again, illustrates the need for the defendant to conduct his discovery." *Id.* at 3. He attests that he has personal knowledge that INS agents have the authority to allow aliens to remain in the U.S. who have illegally entered this country in return for their cooperation on investigations of illegal activity. *Id.*

Whether this is true or not is not relevant to the Court's inquiry. Here, all of the individuals identified by the Defendant as having knowledge of whether there was a deal struck for his cooperation in 1982 have attested that there was no deal. What happened in respect to his sister's naturalization is not before this Court. It is true that the Defendant was not prosecuted for his criminal conduct in 1982 and deportation proceedings were not initiated. He should not, however, have taken his good luck to be a green light to continue his illegal activities, picking up in 1989 where he left off with his application for naturalization based on the sham marriage.

/////

---

[2]There is no provision for filing a Sur-Reply. *See* (Plaintiff's Motion to Strike . . . [Sur-Reply].) While the Court will accept the impermissible filing, there remains no reason to extend discovery.

| | |
|---|---|
| 1 | The Court finds that the Government provides clear, convincing, and unequivocal evidence that leaves no issue in doubt that Defendant Arango, a naturalized citizen, obtained his citizenship illegally. The Court grants summary judgment for the Government. |

The Court finds that the Government provides clear, convincing, and unequivocal evidence that leaves no issue in doubt that Defendant Arango, a naturalized citizen, obtained his citizenship illegally. The Court grants summary judgment for the Government.

**Accordingly,**

**IT IS ORDERED** that the Defendant's Motion to Dismiss (doc. 17) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (doc. 30) is DENIED.

**IT IS FURTHER ORDERED** that the Government's Motion for Summary Judgment (doc. 22) is GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment accordingly.

DATED this 25th day of March, 2010.

David C. Bury
United States District Judge