**GUST ROSENFELD P.L.C.**
One S. Church Ave., Suite 1900
Tucson, Arizona  85701-1627
(520) 628-7070
Jody A. Corrales – 024869
*jcorrales@gustlaw.com*

**Attorneys for** Defendant

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The United States of America, | 4:09-CV-00178-DCB |
| Plaintiff, | |
| vs. | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Fernando Arango, | |
| Defendant. | **(Oral Argument Requested)** |

Pursuant to Rule 56, *Federal Rules of Civil Procedure*, Defendant Fernando Arango ("Arango"), moves for summary judgment on the basis that the doctrine of laches precludes Plaintiff the United States of America ("Plaintiff"), from pursuing a denaturalization proceeding against Arango.  Arango's Motion for Summary Judgment is supported by the following Memorandum of Points and Authorities and Defendant's Statement of Facts in Support of Defendant's Motion for Summary Judgment filed concurrently herewith.

RESPECTFULLY SUBMITTED this 10th day of May, 2013.

                                            GUST ROSENFELD P.L.C.


                                      By /s/ *Jody A. Corrales – 024869*
                                           Jody A. Corrales
                                           Attorneys for Defendant

JAC:jac 570462.1  5/9/2013

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.     FACTUAL INTRODUCTION**

On March 30, 2009, Plaintiff filed a denaturalization Complaint in the above-captioned proceeding. (SOF ¶ 3).

The allegations in Plaintiff's complaint stem from events that occurred from 1982 through 1989. (SOF ¶ 4).

Arango first arrived in the United States in 1972. (SOF ¶ 2). In 1979, Arango's sister, Amparo Valbuena, told Arango she knew an individual named Miguel Diaz who could help Arango complete all of the paperwork required to obtain permanent residency status in the United States. (SOF ¶ 5).

Arango knew nothing about Miguel Diaz. Arango trusted his sister to obtain all of the paperwork from Miguel Diaz and to assist him in filling out the paperwork. Arango never spoke to Miguel Diaz or met Miguel Diaz. (SOF ¶ 6).

Shortly thereafter, Arango's sister informed him that she would introduce Arango to a girl from New York named Vicky Tirado who Arango would be set up with and eventually marry. Although Arango never met Vicky Tirado, Arango claims to have felt an emotional connection to her. Arango spoke with Tirado over the telephone and the two exchanged letters and photographs. (SOF ¶ 7).

Arango never believed that his marriage to Vicky Tirado was invalid or fraudulent. While Arango did not attend the marriage ceremony due to being in Canada and not having enough money to travel to New York for the ceremony, Arango believed his marriage to Tirado was valid under the laws of the State of New York. This is evidenced by the fact that Arango filed for a divorce from Tirado in 1984 in Miami, FL. (SOF ¶ 8).

JAC:jac 570462.1 5/9/2013

On September 15, 1982, Arango and his sister, Amparo Valbuena, met with then-INS agents Peter Candemeres, Gary Hittelman and Charles Ferrigno regarding the Miguel Diaz marriage fraud ring investigation. At that meeting, Arango was told that if he cooperated with providing them information regarding his interactions with Miguel Diaz concerning the way Arango's immigration paperwork was processed, Arango's green card would not be revoked and he would be allowed to remain in the United States and naturalize. (SOF ¶ 9).

Arango's sister Amparo Valbuena was promised the same deal, as she knew far more information about Miguel Diaz than Arango. (SOF ¶ 10).

At the September 15, 1982 meeting, Arango signed numerous documents – none of which he can recall today – as Arango was never provided copies of the paperwork that he signed. (SOF ¶ 11). One of the documents appears to be an affidavit dated September 15, 1982 that was written by former INS agent Peter Candemeres, witnessed by former INS agent Gary Hittelman and allegedly signed by Arango (the "Affidavit"). (SOF ¶ 12).

Arango does not remember reading or signing the Affidavit. (SOF ¶ 13). Likewise, former INS agent Peter Candemeres does not recall seeing the Affidavit or writing the statement contained in the Affidavit. In fact, he does not even recall ever interviewing or meeting with Arango. (SOF ¶ 14). In addition, Former INS agent Gary Hittelman also does not recall the Affidavit, although he is listed as the "witness" on the Affidavit. (SOF ¶ 15).

Once the meeting on September 15, 1982 concluded, the INS agents let Arango be on his way. Arango never heard from agents Candemeres or Ferrigno again. (SOF ¶ 16).

On or about June 13, 1988, Arango filed an Application for Naturalization with

JAC:jac 570462.1 5/9/2013

3

the INS. Arango did this under the assumption that Arango had express or implied authorization from agents Candemeres, Hittelman and/or Ferrigno to do so. (SOF ¶ 18).

On or about June 15, 1989, Arango had his naturalization interview with adjudications officer Johnnie Fripp. Although this interview took place many years ago, Arango can specifically recall asking Fripp whether she had access to his immigration file, to which she responded in the affirmative. Arango answered all of Ms. Fripp's questions truthfully, honestly and accurately. (SOF ¶ 19). Ms. Fripp does not remember interviewing Arango. (SOF ¶ 20).

## II. LEGAL ANALYSIS

### A. Standard for Summary Judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The government's burden of proof in a denaturalization case is heavy. The government must prove its case by "clear, convincing, and unequivocal" evidence and "not leave the issue in doubt." *Fedorenko v. United States,* 449 U.S. 490, 505 (1981)(quoting *Schneiderman v. United States,* 320 U.S. 118, 125 (1943)); *Costello v. United States,* 365 U.S. 265 (1961); *United States v. Kairys*, 782 F.2d 1374, 1379 (7th Cir. 1986); *United States v. Dang*, 488 F.3d 1135, 1139 (9th Cir. 2007).

### B. **Arango is entitled to Summary Judgment as a Matter of Law under the Doctrine of Latches.**

To assert the laches doctrine a party must demonstrate lack of diligence and prejudice. *United States v. Kairys*, 782 F.2d 1374, 1384 (7th Cir. 1986).

While the Ninth Circuit has not addressed whether the doctrine of laches can bar the government from proceeding against a defendant in a denaturalization proceeding, the United States Supreme Court has addressed the issue. *Costello v. United States,* 365 U.S. 265 (1961). Although the *Costello* Court ultimately declined to invoke the doctrine of laches under the facts of that particular case, it did leave open the possibility that the doctrine can be invoked upon the showing of lack of diligence and prejudice. *Id*. at 268. If any case is going to illicit the invocation of laches, this case is it.

### 1. **Plaintiff Lacked Diligence in Attempting to Remove Arango from the United States Once Plaintiff Learned Arango May Have Obtained his Permanent Resident Status Illegally.**

It is clear that Arango meets the first prong of the "laches test." It cannot be disputed that Plaintiff failed to initiate proceedings to remove Arango from the United States once Plaintiff learned in September 1982 that Arango may have obtained his green card illegally. It was not until the filing of the complaint in the above-captioned proceeding on March 30, 2009 (27 years later) did Plaintiff initiate any type of proceedings to have Arango removed from the country.

When asked at his deposition conducted on March 6, 2013, what the proper protocol is when the INS learns an individual procured a green card illegally, former INS agent Gary Hittelman testified at p. 24, lns. 9-18:

> **Q: Okay. Now, when someone signs an affidavit admitting to have illegally obtained their green card, what steps are generally taken administratively?**
> **A: Varies.**
> **Q: And why does it vary?**
> **A: Sometimes it depends upon what the priorities in the office are at the time, whether – whether you're supposed to devote time to doing that or something else.**

JAC:jac 570462.1 5/9/2013

Furthermore, Plaintiff not only failed to remove Arango from the country, Plaintiff hired him to work as a government employee in which Arango served as a Customs Agent with the U.S. Customs and Border Protection from 2002-2005.  It would defy all notions of logic and common sense to think the government did not perform a background check on Arango to determine his citizenship status.  Indeed, Plaintiff admits as much in its Response to Arango's Requests for Admissions (Ex. F):

> **REQUEST FOR ADMISSION 28:** Admit that the Government performed a detailed background check on Defendant when it hired Defendant for a position with the CBP.
>
> **RESPONSE:** Plaintiff objects to this request as vague and ambiguous, particularly concerning the phrase "detailed background check." Because of this, and because of the breadth of the definition of "Government," Plaintiff also objects to this request on the basis that it is overbroad.  Nevertheless, Plaintiff admits that CBP conducted a background check on Defendant when it hired him for a position with the CBP, including confirming that he had status as a United States citizen.

Hiring Arango to work as a government employee not only demonstrates that Plaintiff lacked diligence in removing him from the country, it further demonstrates that Plaintiff embraced Arango as a United States citizen.  Not bad for an individual who allegedly confessed to obtaining his green card through a sham marriage.

To spare the expense of trial and to avoid unnecessary waste of court resources, this Court should grant Arango's motion for summary judgment because it is clear that Plaintiff lacked diligence in pursuing the denaturalization of Arango as evidenced by the fact that they did not institute proceedings to remove him from the country once Candemeres and Hittelman learned Arango allegedly obtained his green card through a sham marriage.

JAC:jac 570462.1 5/9/2013

### 2. Arango is Severely Prejudiced by Plaintiff's Lack of Diligence in Attempting to Remove Arango from the Country.

To succeed in this denaturalization proceeding, Plaintiff must prove by "clear, convincing, and unequivocal" evidence that Arango: (1) illegally procured his naturalization because he was not lawfully admitted for permanent residence, a requisite for naturalization, when he naturalized; or (2) willfully misrepresented or concealed a material fact during his naturalization interview. 8 U.S.C. § 1451(a). Plaintiff cannot prove at trial by "clear, convincing, and unequivocal" evidence either of these two scenarios exist due to the extreme passage of time since all of the relevant events occurred and due to the fading memories of all of the people involved.

Due to the nearly 30-year delay to commence removal or deportation proceedings, Arango is extremely prejudiced because the former INS agents' lack the memory necessary to possess sufficient knowledge as to what occurred nearly 30 years ago. As one court so eloquently notes:

> The policy that undergirds our statutory and judicial limitations on such actions is rooted in an understanding that **with the passage of time, witnesses disappear and memories fade. Such a policy reflects appreciation for the reality that, because our memories are fragile and inevitably compromised by the ravages of time, at some point they can no longer be considered trustworthy for presentation under oath as 'the truth, the whole truth and nothing but the truth.'**…

*United States v. Szehinskyj*, 104 F. Supp. 2d 480, 499 (E.D. Pa. 2000) aff'd, 277 F.3d 331 (3d Cir. 2002).

Indeed, Peter Candemeres, the former INS agent who obtained the statement in the Affidavit in which Arango purportedly confesses to entering into a "sham marriage," testified during his April 12, 2013 deposition that he does not remember Arango and he does not remember the Affidavit or obtaining the statement. Specifically, he testifies at p. 20, lns. 10-19:

JAC:jac  570462.1  5/9/2013

7

1      **Q:  Okay. So does this look familiar to you, this form[1]?**
    **A:  The only thing familiar with it is my handwriting.**
2      **Q:  Okay.**
    **A:  The form itself, I don't remember a thing about it.**
3      **Q:  Okay. So you just -- you don't remember obtaining this affidavit of Fernando Arango?**
4      **A:  No, no.**

5 (Ex. C).

6     Moreover, when asked to explain the discrepancy between his deposition

7 testimony that he *did not* remember obtaining Arango's statement in the Affidavit and

8 the contradictory testimony contained in his Declaration in Support of Plaintiff's

9 Motion for Summary Judgment in which he stated he *did* remember obtaining Arango's

10 statement in the affidavit, he testifies at p. 32, lns. 20-25 and p. 33, lns 1-10:

11     **Q:  Right, Fernando. You don't remember him at all, right?**
12     **A:  I have no knowledge about him or recollection about him.**
13     **Q:  Okay. And you don't have any problems with your memory, right? I mean, you don't suffer from any**
14     **memory diseases like Alzheimer's or - -**
    **A:  I'm trying to remember your name and that's only a**
15     **half hour ago.**
    **Q:  Have you been diagnosed with any memory disorders,**
16     **like Alzheimer's or anything like that?**
    **A:  No.**
17     **Q:  Okay. Are you generally able to remember things that occur day to day?**
18     **A:  Yes.**

19 (Ex. C).

20     If Plaintiff's main witness cannot authenticate or corroborate the statements

21 Arango allegedly made in the Affidavit, it is clear that Plaintiff cannot prove at trial by

22 "clear, convincing, and unequivocal" evidence that Arango illegally obtained his

23 permanent resident status.

24     Likewise, Gary Hittelman, at his deposition taken on March 6, 2013, also

25 testified that he does not remember the Affidavit at p. 23, lns. 18-25 and p. 24 lns. 1-5:

26 ---
[1] Affidavit marked as Exhibit 1 to the deposition of Peter Candemeres conducted on April 12, 2013.

JAC:jac 570462.1 5/9/2013

8

> Q: Now, we're looking at this affidavit of Fernando Arango. Do you recall this affidavit?
> A: Only as it has been used in recent months to refresh my memory.
> Q: Okay. But you wouldn't recall it, generally, if it weren't for – if somebody didn't show it to you,, you wouldn't have - - you don't remember - - how many affidavits did you see of this nature during your 27 years of working with the INS, approximately?
> A: Thousands.
> Q: Thousands, okay. It's pretty hard to remember each and every affidavit, correct?
> A: Yes.

(Ex. D).

Further, the INS adjudications officer who conducted Arango's naturalization proceeding on June 15, 1989 also lacks the requisite knowledge and memory necessary to recite important events that transpired more than 20 years ago. In her declaration dated November 20, 2009 in support of the Plaintiff's motion for summary judgment, Ms. Fripp specifically states:

> **"I do not specifically remember interviewing Arango regarding his Form N-400."** (Ex. E).

If Ms. Fripp does not recall the contents of Arango's naturalization interview, how can Plaintiff prove by "clear, convincing, and unequivocal" evidence that Arango willfully misrepresented or concealed a material fact during his naturalization interview?

Finally, Arango is further prejudiced because it appears as if the only reason Plaintiff is pursuing this this instant denaturalization proceeding is due to his 2005 arrest. However, Arango served his time for the crime he committed in 2005. (SOF ¶ 22). Therefore, this proceeding is patently unfair as it appears it was initiated in bad faith.

JAC:jac 570462.1 5/9/2013

9

Thus, while there may be facts in dispute, there are no *genuine* issues of material fact present in this case since the author of the Affidavit admits that he cannot authenticate the written statement contained in the Affidavit, the witness to the Affidavit, former INS agent Gary Hittelman, admits he does not recall the Affidavit, and the INS adjudications officer who conducted Arango's naturalization proceeding also cannot recall what transpired at Arango's naturalization interview.  It is not surprising that these individuals find it hard to remember events that occurred 30 years ago.  As such, the Court should invoke the doctrine of laches and grant Arango's Motion for Summary Judgment.

### III.    Conclusion

This Court should invoke the doctrine of laches and grant Arango judgment as a matter of law because: (1) it is clear that Plaintiff lacked diligence in attempting to remove Arango from the country, as evidenced by waiting 27 years after learning Arango obtained his greed card by allegedly entering into a sham marriage to do anything about it; and (2) the fading memories of all of the government agents that were involved in Arango's pre-naturalization and naturalization process severely prejudices Arango since it would be impossible for him to prove that he was promised immunity from removal or deportation proceedings if he "cooperated" with INS agents Candemeres and Hittelman in 1982 with respect to the Miguel Diaz investigation and/or prove that he did not conceal or willfully misrepresent a material fact during his naturalization interview.

Based on the forgoing, Arango respectfully requests this denaturalization proceeding be dismissed with prejudice and that he be awarded attorney's fees and costs under The Equal Access to Judgment Act under 28 U.S.C. § 2412.

...

JAC:jac  570462.1  5/9/2013

DATED this 10th day of May, 2013.

GUST ROSENFELD P.L.C.

By /s/ *Jody A. Corrales – 024869*
Jody A. Corrales
Attorneys for Defendant

### CERTIFICATE OF SERVICE

Original of the foregoing electronically filed this 10th day of May, 2013, with:

Clerk, U.S. District Court
District of Arizona
405 West Congress St.
Tucson, AZ 85701
*https://ecf.azd.uscourts.gov*

COPY of the foregoing electronically served or mailed on May 10, 2013, to:

Kirsten L. Daeubler
US Dept. of Justice - Civil Division
Office of Immigration Litigation
P.O. Box 868
Washington, DC 20044
Kirsten.Daeubler@usdoj.gov
*Attorney for Plaintiff*

Fernando Arango
610 Woodgate Lane
Sunrise, FL 33326
*Defendant*

By:  /s/ *Jody A. Corrales*

JAC:jac  570462.1  5/9/2013

11