**GUST ROSENFELD P.L.C.**
One S. Church Ave., Suite 1900
Tucson, Arizona 85701-1627
(520) 628-7070
Jody A. Corrales – 024869
*jcorrales@gustlaw.com*

**Attorneys for** Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| The United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Fernando Arango,<br><br>Defendant. | 4:09-CV-00178-DCB<br><br>**STATEMENT OF FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Rule 56.1, *Federal Rules of Civil Procedure*, Defendant Fernando Arango ("Arango"), hereby files his Statement of Facts in Support of his Motion for Summary Judgment.

1. Arango was born in Cali, Columbia in 1954. (Ex. A).

2. Arango originally came to the United States in 1972 on a student visa. (Ex. A).

3. On March 30, 2009, Plaintiff the United States ("Plaintiff") filed a complaint to revoke Arango's naturalization, alleging Arango illegally procured his United States citizenship and procured his citizenship by concealment of a material fact or by willful misrepresentation. (Compl. ¶¶36, 44, 54.).

4. The allegations in Plaintiff's complaint stem from events that occurred from 1982 through 1989. (Compl.; Ex. A).

JAC:jac 570627.1 5/10/2013

1

5. In 1979, Arango's sister, Amparo Valbuena, told Arango she knew an individual named Miguel Diaz who could help Arango complete all of the paperwork required to obtain permanent residency status in the United States. (Ex. A).

6. Arango knew nothing about Miguel Diaz. Arango trusted his sister to obtain all of the paperwork from Miguel Diaz and to assist him in filling out the paperwork. Arango never spoke to Miguel Diaz or met Miguel Diaz. (Ex. A).

7. Shortly thereafter, Arango's sister informed him that she would introduce Arango to a girl from New York named Vicky Tirado who Arango would be set up with and eventually marry. Although Arango never met Vicky Tirado, Arango claims to have felt an emotional connection to her. Arango spoke with Tirado over the telephone and the two exchanged letters and photographs. (Ex. A).

8. Arango never believed that his marriage to Vicky Tirado was invalid or fraudulent. While Arango did not attend the marriage ceremony due to being in Canada and not having enough money to travel to New York for the ceremony, Arango believed his marriage to Tirado was valid under the laws of the State of New York. This is evidenced by the fact that Arango filed for a divorce from Tirado in 1984 in Miami, FL. (Ex. A).

9. On September 15, 1982, Arango and his sister, Amparo Valbuena, met with then-INS agents Peter Candemeres, Gary Hittelman and Charles Ferrigno regarding the Miguel Diaz marriage fraud ring investigation. At that meeting, Arango was told that if he cooperated with providing them information regarding his interactions with Miguel Diaz concerning the way Arango's immigration paperwork was processed, Arango's green card would not be revoked and he would be allowed to remain in the United States and naturalize. (Ex. A).

10. Arango's sister Amparo Valbuena was promised the same deal, as she knew far more information about Miguel Diaz than Arango. (Ex. A).

11. At the September 15, 1982 meeting, Arango signed numerous documents – none of which he can recall today – as Arango was never provided copies of the paperwork that he signed. (Ex. A).

12. Plaintiff contends that Arango confessed to entering into a sham marriage with Vicky Tirado in an affidavit dated September 15, 1982 that was written by former INS agent Peter Candemeres, witnessed by former INS agent Gary Hittelman and allegedly signed by Arango (the "Affidavit"). (Ex. B).

13. Arango does not remember reading or signing the Affidavit. (Ex. A).

14. Former INS agent Peter Candemeres does not recall seeing the Affidavit or writing the statement contained in the Affidavit. In fact, he does not even recall ever interviewing or meeting with Arango. (Ex. C).

15. Former INS agent Gary Hittelman also does not recall the Affidavit, although he is listed as the "witness" on the Affidavit. (Ex. D).

16. Once the meeting on September 15, 1982 concluded, the INS agents let Arango be on his way. Arango never heard from agents Candemeres or Ferrigno again. (Ex. A).

17. Arango does vaguely recall speaking to agent Hittelman over the phone while he was living at his sister Amparo Valbuena's house. Arango does not recall the specific year or date but the conversations took place sometime in the 1980s. Arango's sister Amparo Valbuena frequently kept in contact with agent Hittelman over the years, and the two, Arango believes, established a friendship as a result of Arango's sister's cooperation with the Miguel Diaz investigation. (Ex. A).

18. On or about June 13, 1988, Arango filed an Application for Naturalization with the INS. Arango did this under the assumption that Arango had express or implied authorization from agents Candemeres, Hittelman and/or Ferrigno to do so. In fact, Arango can recall his sister Amparo Valbuena placing a telephone call to agent Hittelman to ask if Arango and his sister needed a letter from Hittelman or any paperwork for their naturalization interview. (Ex. A).

19. On or about June 15, 1989, Arango had his naturalization interview with adjudications officer Johnnie Fripp. Although this interview took place many years ago, Arango can specifically recall asking Fripp whether she had access to his immigration file, to which she responded in the affirmative. As such, Arango honestly believed that the documents he signed during his September 15, 1982 meeting with agents Candemeres, Hittelman and Ferrigno were in his immigration file. Arango answered all of Ms. Fripp's questions truthfully, honestly and accurately. (Ex. A).

20. Ms. Fripp does not remember interviewing Arango. In her Declaration, dated November 20, 2009, in support of the Plaintiff's Motion for Summary Judgment, Ms. Fripp specifically states, "I do not specifically remember interviewing Arango regarding his Form N-400." (Ex. E).

21. In or about 2003, Arango became employed as a Customs Agent with the U.S. Customs and Border Protection. Arango recalls going through a background investigation upon his hire in which the U.S. Customs and Border Protection inquired into Arango's United States citizenship. Arango worked as a Customs Agent until 2005, when he was arrested for taking a bribe. Arango ended up pleading guilty and served 7 years in prison. (Ex. A).

22. The United States concedes that the U.S. Customs and Border Protection conducted a background check on Arango upon his hire and verified his United States

JAC:jac 570627.1 5/10/2013

4

citizenship. (Ex. F, p. 10).

DATED this 10th day of May, 2013.

GUST ROSENFELD P.L.C.

By /s/ *Jody A. Corrales – 024869*
Jody A. Corrales
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

Original of the foregoing electronically filed this 10th day of May, 2013, with:

Clerk, U.S. District Court
District of Arizona
405 West Congress St.
Tucson, AZ 85701
*https://ecf.azd.uscourts.gov*

COPY of the foregoing electronically served or mailed on May 10, 2013, to:

Kirsten L. Daeubler
US Dept. of Justice - Civil Division
Office of Immigration Litigation
P.O. Box 868
Washington, DC 20044
Kirsten.Daeubler@usdoj.gov
*Attorney for Plaintiff*

Fernando Arango
610 Woodgate Lane
Sunrise, FL 33326
*Defendant*

By: /s/ *Jody A. Corrales*

JAC:jac 570627.1 5/10/2013

5