**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| The United States of America, | No. CV 09-178 TUC DCB |
| Plaintiff, | |
| vs. | **ORDER** |
| Fernando Arango, | |
| Defendant. | |

The government asks that this Court revoke Fernando Arango's citizenship pursuant to 8 U.S.C. § 1451. Section 1451 allows for the revocation of citizenship that was "illegally procured or . . . procured by concealment of a material fact or by willful misrepresentation . . . ." The government alleges that Arango illegally procured his citizenship because he was not eligible for it in 1989 when he was naturalized, and that he obtained it by misrepresenting and omitting material facts in his naturalization application and interview. Arango now moves for summary judgment on the grounds that the doctrine of laches precludes the government from pursuing a denaturalization proceeding against him.

Arango first entered the U.S. on a student visa in 1972, and obtained Lawful Permanent Resident (LPR) status in 1980 through a fraudulent marriage. (Defendant's

SOF, Exh. A, Defendant's Declaration at ¶ 2; Defendant's SOF, Exh. B, Affidavit.) Arango alleges that in 1982, after these events were uncovered, immigration officials promised that he would be allowed to retain his LPR status and later naturalize in exchange for helping to prosecute the individual who arranged his marriage. (Defendant's SOF, Exh. A, Defendant's Declaration at ¶ 7.) He then signed an affidavit stating that his marriage was fraudulent. (Defendant's SOF, Exhibit B, Affidavit.) In 1989, Arango was permitted to naturalize and was later hired as an agent with U.S. Customs and Border Protection in 2003. (Defendant's SOF, Exh. A, Defendant's Declaration at ¶¶ 12-13.) In 2005, he pled guilty to accepting a bribe to cross drugs into the United States and was sentenced to nine years incarceration. The government initiated these denaturalization proceedings in 2009, approximately 27 years after the government discovered Arango's LPR status was fraudulently obtained.

This Court granted summary judgment in favor of the government, finding that no agreement existed to permit Arango to retain his LPR status and to naturalize, and holding that there were no genuine issues of material fact as to whether Arango obtained his citizenship illegally. (Order at 6-7.) The Ninth Circuit reversed on the grounds that the existence and nature of the cooperation agreement were genuine issues of material fact, improper for determination by summary judgment. *United States v. Arango*, 670 F.3d 988, 990 (9th Cir. 2012). The only issue currently before the Court is whether the doctrine of laches precludes the government from moving forward with these denaturalization proceedings. Summary judgment on this issue is inappropriate because of remaining genuine issues of material fact.

**Standard of Review**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it may affect the outcome of the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). If there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party,

JDDL-K

- 2 -

1 any dispute as to the facts is not genuine. *Id*. All reasonable inferences are drawn in favor
2 of the nonmoving party. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000).

**Discussion**

To successfully bar a claim under the doctrine of laches, the party asserting the defense must show that (1) the opposing party lacked diligence, and (2) this prejudiced the party asserting the defense. *Costello v. United States*, 365 U.S. 265, 282 (1961). The touchstone of the inquiry is not the amount of time that has passed, but the "inequity of permitting the claim to be enforced." *Galliher v. Cadwell*, 145 U.S. 368, 373 (1892). "[L]aches is an equitable, hence flexible, doctrine, and no length of time is considered *per se* unreasonable." *Whitfield v. Anheuser–Busch, Inc.,* 820 F.2d 243, 245 (8th Cir. 1987). The application of laches "depends on a close evaluation of all the particular facts in a case," and is therefore "seldom susceptible of resolution by summary judgment." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000) (citing *Bratton v. Bethlehem Steel Corp.,* 649 F.2d 658, 666–67 (9th Cir.1980)).

Whether laches can be asserted against the government in a denaturalization proceeding is an open question in the Ninth Circuit. *United States v. Dang*, 488 F.3d 1135, 1143-44 (9th Cir. 2007); *see also Costello* 365 U.S. at 282 (leaving the question unresolved). If one of the required elements of laches is not present, the defense must fail, even assuming its applicability. *See Costello* 365 U.S. at 282.

**1. Diligence**

A party does not lack diligence in waiting to bring a claim as long as the delay was reasonable. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001). "In determining reasonableness, courts look to the cause of the delay." *Id*.

The government did not demonstrate a lack diligence by pursuing denaturalization only after Arango was convicted of a crime or by previously declining to initiate removal proceedings against him.[1] Immigration officials have wide discretion in deciding whom

---

[1] At this time, the government is only pursuing denaturalization and is not attempting to remove Arango from the country. A separate hearing before an immigration judge would be necessary for the government to pursue removal. *See* 8 U.S.C. §

to prosecute and when to do so. *See Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012) (noting that "[a] principal feature of the removal system is the broad discretion entrusted to immigration officials"); *see also Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."). In a recent agency memorandum regarding enforcement priorities, Immigration and Customs Enforcement (ICE) estimated that it had the resources to remove less than four percent of the undocumented population believed to be present in the United States. *See* Memorandum from John Morton, Director of U.S. Immigration and Customs Enforcement to All ICE Employees (March 2, 2011), at 1.[2] Many factors, including whether the alien is a threat to national security or public safety and the personal circumstances of the alien, may be considered in determining whether to initiate proceedings. *See* Memorandum from John Morton, Director of U.S. Immigration and Customs Enforcement to All Field Office Directors, All Special Agents in Charge, and All Chief Counsel (June 17, 2011), at 4-5.[3]

Even though immigration officials can almost always choose to exercise prosecutorial discretion in an individual's case, such a decision has never been thought to be binding on the agency's ability to bring removal proceedings in the future. *See* Memorandum from Doris Meissner, Commissioner of Immigration and Naturalization Service to Regional Directors, District Directors, Chief Patrol Agents, and Regional and District Counsel (Nov. 17, 2000),[4] at 12 ("[I]mmigration violations are continuing

---

1229a(a)(1). Thus, the issue arises as to whether the government's previous decision not to pursue removal is relevant to whether laches bars the present denaturalization action. Because both removal and denaturalization rest on the same underlying facts and defenses in this particular case, the government's prior decision not to pursue removal proceedings will be taken into account.

[2] http://www.ice.gov/doclib/news/releases/2011/110302washingtondc.pdf.

[3] http://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf.

[4] http://www.legalactioncenter.org/sites/default/files/docs/lac/Meissner-2000-memo.pdf.

offenses that, as a general principle of immigration law, continue to make an alien legally removable regardless of a decision not to pursue removal on a previous occasion."). This is particularly true when new events or circumstances are brought to the agency's attention that might make a particular individual of a higher enforcement priority. *See id.* (stating that INS officials should typically abide by a previous favorable prosecutorial decision "absent new facts or changed circumstances"). For example, if immigration officials previously exercised prosecutorial discretion in the case of an individual with no criminal record, and the individual later committed a crime, the government would retain every right to place that individual in removal proceedings.

Here, it is undisputed that immigration officials had knowledge in 1982 that Arango was removable based on his fraudulently obtained LPR status but did not choose to initiate removal proceedings. This is entirely within the discretion of the immigration officials and does not reflect a lack of diligence. *See Arizona*, 132 S. Ct. at 2499 ("Returning an alien to his own country may be deemed inappropriate even where he has committed a removable offense or fails to meet the criteria for admission.") Arango argues that the government is only now seeking to denaturalize him because of the crimes he committed as a CBP agent, and that this is evidence of a lack of diligence. (Reply at 9-11.) It is both reasonable and necessary, however, for immigration officials to take into account an individual's criminal record in determining whether to expend agency resources on enforcement. Accordingly, excising this discretionary power cannot create an unreasonable delay for the purposes of laches.

Finally, Arango argues that immigration officials demonstrated a lack of diligence by allowing him to naturalize and then gain employment in a government agency when they were aware that he obtained his LPR status fraudulently. (Motion for Summary Judgment at 6; Reply at 7.) Arango simply repackages his assertions of estoppel and ratification as a lack of diligence to fit within the context of a laches argument. Whether the relevant officials did in fact possess knowledge of his past fraudulent marriage and nevertheless allowed him to naturalize is a disputed factual matter to be decided at trial.

Although knowledge of such activity may not have triggered an affirmative duty to remove him, allowing him to naturalize under such circumstances would, at the very least, violate provisions of the Immigration and Nationality Act. *See* 8 U.S.C. § 1427(a) (requiring that an individual be lawfully admitted for permanent residence prior to naturalizing). Intentionally allowing an individual to naturalize in violation of provisions set forth by Congress cannot be said to be within an agency's discretion. Therefore, Arango argues that a finding that the agency possessed this knowledge at the time it allowed his naturalization and intentionally overlooked it could potentially demonstrate a lack of diligence on the part of the agency to address his fraudulently obtained LPR status. Arango asserts laches would then apply. These are of course the facts to be proved at trial necessary for Arango to prevail on his theories of estoppel and ratification.

**2. Prejudice**

In the context of laches, a showing of prejudice may be either evidentiary or expectations based. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001). Evidentiary prejudice includes "lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died" while expectations-based prejudice requires the defendant to show that he took "actions or suffered consequences that [he] would not have, had the plaintiff brought suit promptly." *Id.*

Evidentiary prejudice is the form of prejudice Arango asserts here. Specifically he argues that he is prejudiced by the "fading memories" of the three former immigration agents with whom he allegedly entered into a cooperation agreement. (Motion for Summary Judgment at 10.) In addition he argues that he is prejudiced because the adjudication officer who conducted his naturalization interview does not remember the interview, and because the passage of time will allow the government to avoid laying foundation to authenticate the statements made in Arango's signed affidavit and naturalization application. (Motion for summary judgment at 9; Reply at 8.)

A critical element of Arango's defense rests on his ability to demonstrate the existence of a cooperation agreement with certain immigration officials to allow him to

retain his LPR status and later naturalize. *See Thomas v. INS*, 35 F.3d 1332, 1337 (9th Cir. 1994) (recognizing that immigration officials can be bound by a cooperation agreement between a noncitizen and the government). Because Arango has no paper documentation of a cooperation agreement, he must rely on his and the immigration agents' memories of events that took place three decades ago. At least one key agent has stated that he no longer remembers meeting with Arango. Lack of definitive memories may cut for or against Arango at trial depending on other corroborating evidence.

## Conclusion

Assuming prejudice, Arango cannot benefit from laches because he cannot establish a lack of diligence in the context of his assertion that the Government waited too long to initiate these denaturalization proceedings. Any prejudice in the context of his argument that naturalizing him reflects a lack of diligence remains to be seen at trial; fading memories will go to the weight of the evidence presented at trial.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Doc. 97) is DENIED.

**IT IS FURTHER ORDERED** that, within 30 days of the filing date of this Order, the parties shall file the Joint Pretrial Order. *See* Scheduling Order (Doc. 79) attachment.

Dated this 31st day of March, 2014.

David C. Bury
United States District Judge